**In re JUDGE ELMO B. HUNTER'S SPECIAL GRAND JURY EMPANELED SEPTEMBER 28, 1978.**

No. 81–1622.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 4, 1981.

Decided Dec. 29, 1981.

John F. Murray, Acting Asst. Atty. Gen., Washington, D.C., Michael L. Paup, Robert E. Lindsay, Arthur L. Passar, Attys., Tax Div., Dept. of Justice, Washington, D.C., for appellant; J. Whitfield Moody, U. S. Atty., Kansas City, Mo., of counsel.

Before GIBSON, Senior Circuit Judge, and ROSS and STEPHENSON, Circuit Judges.

STEPHENSON, Circuit Judge.

The government appeals from an order of the district court denying its *ex parte* motion for disclosure of grand jury materials under Fed.R.Crim.P. 6(e)(3)(C)(i), which provides that a court may order disclosure of grand jury materials "preliminarily to or in connection with a judicial proceeding."

The government's *ex parte* motion sought disclosure to the Internal Revenue Service of grand jury evidence (both testimony and exhibits) developed in an investigation which resulted in the prosecution and conviction of two individuals for filing false income tax returns in which they did not report all of their gross income, in violation of 26 U.S.C. § 7206(1). After termination of the criminal proceedings, the government sought the grand jury information for the purpose of conducting a civil tax audit of the two convicted individuals and of the third individual whom the grand jury declined to prosecute.

The district court denied the motion. It concluded that disclosure would not be "preliminary to or in connection with a judicial proceeding" within the meaning of

Rule 6(e)(3)(C)(i) [1] because (1) the civil audit may show no tax owed despite the revenue agent's assertion in a supporting affidavit that there was substantial tax due and owing and (2) if a deficiency is assessed, the taxpayer may elect to pay the assessment, in which event no judicial proceeding would occur.[2]

The government argues on appeal that, "the legislative history underlying Rule 6(e) and the better reasoned case law indicate that the examination, assessment, and collection of civil tax liability can be considered as preliminary to a judicial proceeding * * * regardless of the possibility of settlement of a tax dispute without trial."

LEGISLATIVE HISTORY

The provisions of Rule 6(e)(3)(C)(i) were a part of the original rule and have remained unchanged in substance. When Rule 6 was amended in 1977, the Senate Committee on the Judiciary, in Report No. 95–354, stated that:

There is, however, no intent to preclude the use of grand jury-developed evidence for civil law enforcement purposes. On the contrary, there is no reason why such use is improper, assuming that the grand jury was utilized for the legitimate purpose of a criminal investigation. Accordingly, the Committee believes and intends that the basis for a court's refusal to issue an order under paragraph (C) to enable the government to disclose grand jury information in a non-criminal proceeding should be no more restrictive than is the case today under prevailing court decisions [citing in a footnote *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 683–84 [78 S.Ct. 983, 986–87, 2 L.Ed.2d 1077] (1958); *Robert Hawthorne, Inc. v. Director of Internal Revenue*, 406 F.Supp. 1098, 1126 (E.D.Pa.1976)]. It is contemplated that the judicial hearing in connection with an application for a court order by the government under subparagraph (3)(C)(i) should be *ex parte* so as to preserve, to the maximum extent possible, grand jury secrecy. (Citation omitted).

1977 U.S.Code Cong. & Admin.News 527, 532.

In making this statement, the Senate Committee, as indicated, referred to *Robert Hawthorne, Inc. v. Director of Internal Revenue, supra*, 406 F.Supp. 1098. The government argues that the court in *Hawthorne* expressed approval of disclosure of grand jury materials to the IRS for civil use and that the Committee's citation of *Hawthorne*:

demonstrates that Congress specifically envisioned disclosure under Rule 6(e)(3)(C)(i) for Internal Revenue Service civil tax investigations, since *Hawthorne*'s expression of approval of such disclosure is the only aspect of that decision which reasonably relates to the intention expressed in the report * * * not to preclude the use of grand jury-developed evidence for civil law enforcement purposes.

The court in *Hawthorne* restated existing law when it stated in general terms that ultimate civil use of grand jury material is proper so long as the government did not acquire it in bad faith. 406 F.Supp. at 1119 n.35. The court also noted that when an agency completes its role in rendering technical assistance to an attorney for the government in a criminal matter, "[t]he future use of the materials to which it had access will follow as though there had been no access." 406 F.Supp. at 1129. In a footnote to that sentence, the court stated that the materials may result in a petition for disclosure under what is now Rule 6(e)(3)(C)(i).

---

1. Rule 6(e)(3)(C)(i) provides:

    (C) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made—
    (i) when so directed by a court preliminarily to or in connection with a judicial proceeding * * *.

2. The court concluded that disclosure otherwise would be appropriate. It specifically found that the grand jury had been used in good faith, that the material sought was relevant to the audit, and that the government had demonstrated a particularized need for the information.

As the Senate Report makes clear, disclosure under Rule 6(e)(3)(C)(i) is governed by prevailing case law.

CASE LAW

A. *IRS· Cases*

The Fourth Circuit takes the position that judicially supervised disclosure of grand jury materials to the IRS for civil law enforcement purposes is authorized. In *In re Grand Jury Subpoenas, April, 1978*, 581 F.2d 1103, 1109–10 (4th Cir. 1978), *cert. denied*, 440 U.S. 971, 99 S.Ct. 1533, 59 L.Ed.2d 787 (1979), the court stated:

> This is not to say that the Audit Division, which is charged with civil enforcement of federal tax law, has no legitimate interest in the materials secured by the grand jury. "The Government does not sacrifice its interest in unpaid taxes just because a criminal prosecution begins." *United States v. LaSalle National Bank*, 437 U.S. 298, 311–12, 98 S.Ct. 2357, 2364–65, 57 L.Ed.2d 221 (1978). Congress recognized this in amending Rule 6(e) and, accordingly, authorized judicially supervised disclosure of grand jury materials to government agency personnel for civil law enforcement purposes. *See* S.Rep.No. 95–354, 95th Cong., 1st Sess., *reprinted in* [1977] U.S.Code Cong. & Admin.News, pp. 527, 531–32.

The court noted that "very recently" one of the district courts in the Fourth Circuit had occasion to supervise such a disclosure and had developed certain criteria which the government must meet in securing a disclosure order under Rule 6(e)(2)(C)(i)[3] where the purpose of the disclosure was to aid civil tax enforcement. *Id.* at 1110.

■ The case referred to was *In re December 1974 Term Grand Jury Investigation*, 449 F.Supp. 743 (D.Md.1978). The district court, in permitting disclosure by court order of grand jury materials for use in determining civil tax liabilities, thoroughly reviewed the legislative history of Rule 6(e).

The criteria prescribed by the court in securing a disclosure order included: first, there must be a showing under oath by a responsible official of the government that the grand jury proceeding has not been used as a subterfuge for obtaining records for a civil investigation or proceeding. (This should not be difficult in the instant case in view of the indictment and conviction of two of the three taxpayers involved.)[4] Further, the government should give a general description of the materials sought to be disclosed in order that the court can intelligently determine that the materials sought to be disclosed have some rational connection with a specific existing or contemplated judicial proceeding as envisaged by Rule 6(e). (In the instant case, Judge Hunter found that the materials sought were relevant to the civil tax audit and production of the materials would result in an enormous savings of taxpayer dollars and time and effort by the government.)

The Fifth Circuit, in *In re Grand Jury*, 583 F.2d 128, 131 (5th Cir. 1978), approved an order granting access to grand jury materials to attorneys for the Civil Division, Department of Justice, and noted, "[i]t would entail needless duplication of effort both by the government and witnesses to require a new marshalling of the material already produced before the grand jury [citing the Fourth Circuit cases set out above, 581 F.2d 1103 and 449 F.Supp. 743]."

In *In re Grand Jury Investigation No. 78–184*, 642 F.2d 1184 (9th Cir. 1981), the government moved for disclosure of grand jury materials used in a criminal tax investigation to civil division attorneys and their assistants for possible civil prosecution. The court, in refusing their production under Rule 6(e)(3)(A)(i), stated, "we are not inclined to extend the 'attorney for the government' exception to the secrecy rule beyond disclosure for use in assisting grand

---

3. Now Rule 6(e)(3)(C)(i).

4. That criminal indictments did not result against *one* of the taxpayers is no reflection on the integrity of the investigation and does not mean that the evidence obtained cannot be

used against him in a civil proceeding. *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 683–84, 78 S.Ct. 983, 986–87, 2 L.Ed.2d 1077 (1958).

juries and related aspects of criminal law enforcement", but held "that Congress intended a court order under subsection C to be the avenue to access to grand jury materials by the government for civil use." *Id.* at 1190. In so doing, the court held that the civil enforcement action was a judicial proceeding. *Id.* at 1191. The court further directed that disclosure should not be made except upon a showing of "particularized and compelling need." *Id.* Further, that the hearing on the government's application may or may not be *ex parte. Id.* at 1192.[5]

To the contrary, in a recently decided case, *In re Special February, 1975 Grand Jury,* 652 F.2d 1302 (7th Cir. 1981) ("Baggot"), a panel of the Seventh Circuit, in a 2–1 opinion, dealt with a request for disclosure to the IRS of grand jury evidence pertaining to the civil tax liability of James Baggot, who had been convicted, pursuant to a plea agreement, of fraudulent commodity trading, which involved fraudulent business losses and unreported income having apparently substantial impact on Baggot's true tax liability. As did the district court in this case, the majority of the Seventh Circuit panel in *Baggot* ruled that the IRS civil investigation into Baggot's possible additional tax liabilities was "too embryonic, speculative, and uncertain to firmly say that it [was] 'preliminarily to' a judicial proceeding." *Id.* at 1308.[6]

Judge Pell, in dissenting, reflects our views as to the proper interpretation of "preliminarily to a judicial proceeding."

> Obviously, it appears to me, the drafters of the rule contemplated two situations in which there could be disclosure based upon a judicial proceeding situation. One of these was "in connection" with a judicial proceeding which would seem to mean that there was a judicial proceeding in existence. On the other hand, if we give the plain dictionary meaning to the word "preliminarily" that of "preceding the main business" or "lying before," or "leading to," the disclosure would be pertaining to a judicial proceeding not yet in existence. The majority opinion appears to hold that there must be some real certainty that there will be a judicial proceeding, or, at the very least, such a proceeding must be in an enceinte status. I do not regard the rule as so requiring.
>
> It is true, of course, as the majority states, that the option of litigation rests with the taxpayer who may wish to pay any deficiency assessed if one is even assessed. From the vigorous manner in which the present litigation is being pursued, I would find more certainty in the likelihood of ultimate judicial proceedings than does the majority. In any event, the actual beginning of litigation is always an uncertain matter which may be deferred or even never begun for any of several reasons. If we read into the rule that the disclosure preliminarily to a judicial proceeding must be preliminarily to a judicial proceeding bound to happen, we substantially are curtailing the plain language of the rule in a situation such as the present where there has been a guilty plea to an information charging an understatement of taxable income of approximately $60,000. It would not seem to characterize correctly the likelihood of ultimate vigorous pursuit of civil liability by the Internal Revenue Service as being "embryonic, speculative and uncertain." In sum, on this point, it appears to me from the facts of this case that there is reasonable certainty that a judicial proceeding will follow but that even if this was not a practical certainty under the plain wording of the rule of disclosure the Internal Revenue Service was entitled to disclosure of the items it sought.

*In re Special February, 1975 Grand Jury, supra,* 652 F.2d at 1310–11.

---

**5.** *See Petition of United States for Disclosure, etc.,* 518 F.Supp. 163 (E.D.Wis.1981); Legislative History of Rule 6(e)(3)(C)(i), 1977 U.S. Code Cong. & Admin.News 532.

**6.** Two district courts have reached the same conclusion. *In re 1978–1980 Grand Jury Proceedings,* 503 F.Supp. 47, 48 (N.D.Ohio 1980); *In re April 1977 Grand Jury Proceedings,* 506 F.Supp. 1174, 1181 (E.D.Mich.1981) [appeal pending].

Here two of the three taxpayers being investigated were convicted of filing false income tax returns in which they did not report all of their gross income. Taxpayer Number One has allegedly under-reported his income $43,660 in 1975 and $4,656 in 1977; Taxpayer Number Two, $20,946 in 1974 and $21,219 in 1975; and Taxpayer Number Three, $1,443 in 1975 and $92,404 in 1976. (Affidavit of supervisory Internal Revenue agent as to evidence developed during the course of the grand jury investigation filed in support of government's application for disclosure.)

Therefore, here, as in the dissent in *Baggot*, it is arguably unreasonable to say that judicial proceedings are "embryonic, speculative and uncertain." The majority opinion in *Baggot* is arguably inconsistent with the Seventh Circuit's opinion in *Patrick v. United States*, 524 F.2d 1109, 1117 (7th Cir. 1975), written by Justice Stevens. There the Seventh Circuit held, in an action to enjoin a jeopardy assessment[7] and collection of wagering taxes, that the district court could reasonably anticipate that judicial proceedings would arise out of a contest over Patrick's failure to file any gambling tax returns when he admittedly had received such income.

### B. *Other Agency Cases—Quasi-judicial Nature of Proceedings*

The major exception to a restrictive application of Rule 6(e)(3)(C)(i) has occurred with respect to proceedings the courts have characterized as quasi-judicial. Disclosure has been granted in cases dealing with the disciplining of lawyers, the removal of judges, the investigation and disciplining of government employees, and the prosecution of violators of criminal laws on the theory that the scheme under which such an action is taken is designed to culminate in, or clearly contemplates, a judicial proceeding. *In the Matter of Disclosure of Testimony Before the Grand Jury* (Troia), 580 F.2d 281, 286 (8th Cir. 1978). *But see Bradley v.*

*Fairfax*, 634 F.2d 1126, 1128–31 (8th Cir. 1980); *In re Special February 1971 Grand Jury v. Conlisk*, 490 F.2d 894, 897 (7th Cir. 1973); *Doe v. Rosenberry*, 255 F.2d 118, 120 (2d Cir. 1958); *United States v. Sobotka*, 623 F.2d 764, 766 (2d Cir. 1980). *Cf. United States v. Bates*, 627 F.2d 349, 351 (D.C.Cir. 1980) (The court distinguished its case, dealing with a request of the Federal Maritime Commission for disclosure, from cases dealing with the disciplining of lawyers, on the basis that "disciplinary proceedings of lawyers * * * are a function which has been assigned to the judiciary from time immemorial. It is not only preliminary to a judicial proceeding, it is *part* of a judicial proceeding."). Similarly, disclosure has been granted to a state attorney general for use in determining whether to bring a federal antitrust action. *United States v. Colonial Chevrolet Corp.*, 629 F.2d 943 (4th Cir. 1980), *cert. denied sub. nom. Certain Individuals and Corporations v. United States*, 450 U.S. 913, 101 S.Ct. 1352, 67 L.Ed.2d 337 (1981); *United States v. B. F. Goodrich Co.*, 619 F.2d 798 (9th Cir. 1980).

In none of these cases can it be said with any certainty that a judicial proceeding will occur. The investigating authority may conclude there has been no wrongdoing, or the subject of the investigation may not contest the adverse action. In this respect, the government here is persuasive in contending that there is no substantial difference from the IRS civil tax assessment situation.

In summary, the record discloses that Judge Hunter found that the government acted in good faith in its use of the grand jury for the purpose of conducting a criminal investigation. The material sought was relevant to and a particularized need was shown for its disclosure to the government in connection with civil tax enforcement proceedings. We hold that disclosure was sought preliminarily to a judicial proceeding under Rule 6(e)(3)(C)(i).

---

7. *But see In re April 1977 Grand Jury Proceedings, supra*, 506 F.Supp. 1174, 1178 (E.D.Mich. 1981), where the court distinguished *Patrick v. United States*, 524 F.2d 1109 (7th Cir. 1975), from the typical tax deficiency situation on the basis that *Patrick* involved a jeopardy assessment, drastic in nature, from which a judicial proceeding *could be reasonably anticipated.*

Reversed and remanded to the district court with instructions to authorize disclosure of the grand jury materials to the Internal Revenue Service for its use in the proposed civil tax examination. Disclosure shall be made in such manner, at such time, and under such conditions as the district court may direct.